UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY LOVE,<br><br>         Plaintiff,<br><br>    v.<br><br>TRI-COUNTIES BANK,<br><br>         Defendant. | No. 2:22-cv-01761-TLN-CKD PS<br><br>FINDINGS AND RECOMMENDATIONS |

        Plaintiff Mary Love paid the filing fee and filed this civil action on October 6, 2022. Plaintiff initially had counsel, but counsel withdrew on September 8, 2023. (ECF No. 21.) Plaintiff proceeds in this matter pro se. This matter is before the undersigned pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 302(c)(21).

        Presently before the Court is defendant Tri-Counties Bank's motion for attorney's fees. (ECF No. 43.) The Court took the matter under submission without oral argument because plaintiff failed to file an opposition under Local Rule 230(c); the Court ordered plaintiff to file an opposition within fourteen days. (ECF No. 48.) Plaintiff filed her opposition on July 2, 2024. (ECF No. 51.) Defendant filed its reply on July 12, 2024. (ECF No. 52.) For the reasons set forth below, defendant's motion should be GRANTED.

////

## I. Procedural and Factual Background

Plaintiff filed a complaint against defendant alleging causes of action under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(k); the California Consumer Credit Reporting Agencies Act, California Civil Code § 1785.25(a); California Civil Code § 2925; Cancellation of Recorded Instruments; the Business and Professions Code, § 17200; Negligence, and Declaratory Relief. (ECF No. 1.) Plaintiff alleges that she owns real property in Nevada City, California, encumbered by a deed of trust held by Carrington Mortgage. (*Id.* at 3, ¶¶ 15, 17.) Defendant's motion for attorney's fees alleges that in 2011, defendant entered into a purchase and sale agreement with the FDIC. (ECF No. 43-1 at 5.) The FDIC took over Citizens Bank of Northern California, and one of the assets was a home equity line of credit to plaintiff secured by her Nevada County Property ("Loan"). (*Id.*; ECF No. 43-3 at 36.) Defendant acquired Citizens Bank of Northern California's interest in plaintiff's loan. (ECF No. 43-3 at 2, ¶ 6 (Declaration of Ron Scribner), 36.) Defendant attached six exhibits to its motion, including a credit agreement and disclosure, a deed of trust, change in terms to the credit agreement, modification to the deed of trust, and an assignment of the deed of trust. (*Id.* at 2-3, Exhs. 1-6.) The initial Credit Agreement and Disclosure was executed on December 23, 2005 between plaintiff[1] and Citizens Bank of Nevada County. (*Id.* at 6 (Exh. 1).)

In July or August of 2015, plaintiff obtained a home equity line of credit from defendant that was secured by a junior deed of trust against her Nevada County property. (ECF No. 1 at ¶ 19.) Plaintiff was attempting to modify her loan with defendant when defendant allegedly issued a 1099-C in the approximate amount of $174,953.44 that relieved plaintiff's obligation on the equity line of credit. (*Id.* ¶¶ 22, 26.) Despite this release of debt, defendant continued to demand payment from plaintiff and continued to report on plaintiff's credit report that she was responsible for the allegedly forgiven debt. (*Id.* at 4, ¶ 27.) Defendant filed a notice of default against plaintiff's residence seeking to initiate foreclosure proceedings. (*Id.* ¶ 31.) Plaintiff

---

[1] Some of the documents attached to defendant's motion have the name "Visitacion B. Lupton" or "Mary Vistacion Bassig Love." Neither party contests the names on the documents or contest that the named party is not plaintiff.

2

alleges that the 1099-C cancelled her debt and released her from personal liability on the loan. (*Id.* at 5 ¶ 38.) Defendant reported that plaintiff was liable for the loan and that there was an outstanding balance which continued to grow. (*Id.* ¶¶ 40, 41.)

As the litigation proceeded, defendants indicated that they had not received plaintiff's verified responses to their written discovery demands. After two informal discovery conferences with the court, the parties filed a joint statement in which plaintiff's counsel agreed that responses were required but that plaintiff was uncooperative in their production. (ECF Nos. 15, 16, 17, 18.) After a third informal discovery conference plaintiff's counsel filed a motion to withdraw on August 2, 2023 (ECF Nos. 19, 20), which was granted (ECF No. 21). The district judge assigned to the matter ordered plaintiff to provide notice about whether she was going to obtain new counsel or proceed pro se. (ECF No. 21.) Plaintiff was warned that if she did not provide notice, her case could be subject to dismissal, or the Court would assume she was proceeding pro se. (*Id.*) On October 31, 2023, the district judge issued a minute order reflecting plaintiff's failure to file notice regarding counsel and determining that plaintiff was therefore proceeding pro se.[2] (ECF No. 23.)

On November 2, 2023, the undersigned issued an order for plaintiff to show cause why the case should not be dismissed for failure to prosecute and failure to comply with court orders. (ECF No. 24.) On November 15, 2023, plaintiff filed a response to the order to show cause. (ECF Nos. 25.) On November 28, 2023, the Court discharged the order to show cause over defendant's objections but ordered plaintiff to verify her discovery responses and provide defendant all documents within her possession, custody, or control within 14 days. (ECF No. 28.) Plaintiff was cautioned that failure to comply with the court's order could result in a recommendation that this case be dismissed. (*Id.*)

Plaintiff informed the Court that she did not provide discovery responses to defendant, but instead sent them to the court, but that they were returned to her. (ECF No. 30.) On January 3, 2024, the Court recommended dismissing plaintiff's case for failure to prosecute. (ECF No. 31.)

---

[2] As plaintiff was proceeding pro se, the matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 302(c)(21).

As the court noted in its Findings and Recommendations, issued more than fifteen months after plaintiff commenced the action,

> The plaintiff has informed the court that she did not provide discovery responses to defendant, but instead sent them to the court, but that they were returned to her. (ECF No. 30.) Further, plaintiff requests a "one-month extension to find an affordable attorney" and recover from an illness. (Id.) However, plaintiff has not claimed that her illness prevented her from complying with the court's order. Further, the fact that plaintiff sent her discovery responses to the court suggests that her failure to meet her discovery obligations is not due to illness, but rather her failure to follow instructions.

*Id*. at 2.

Notably, although plaintiff filed objections to the findings and recommendations, she did not provide the discovery responses at issue. (ECF Nos. 31, 32, 33.) The District Judge adopted the findings and recommendations, and a judgment issued on May 3, 2024. (ECF Nos. 36, 37.) Plaintiff filed a notice of appeal to the Ninth Circuit on May 29, 2024. (ECF No. 38.)

Defendant filed the instant motion for attorney's fees on June 3, 2024. (ECF No. 43.) The motion is fully briefed. (ECF No. 51, 52.)

**II.   Legal Standards**

Under the American Rule, the prevailing party is ordinarily not entitled to collect reasonable attorney's fees from the losing party. *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 448 (2007). However, a statute or enforceable contract can overcome this rule. *Id.* State law governs the enforceability of attorneys' fees in contract provisions. *Faubion v. FCI Lender Servs., Inc.*, 2021 WL 2681996, at *2 (E.D. Cal. June 30, 2021) (applying California law to a claim for attorneys' fees based on a contract where the court has federal question jurisdiction); *Gilbert v. World Sav. Bank, FSB*, 2011 WL 995966, at *1-2 (N.D. Cal. Mar. 21, 2011) (same); *Ismail v. Wells Fargo Bank, N.A.*, 2013 WL 4516122, at *10 (E.D. Cal. Aug. 23, 2013 (applying California law to claim for attorney's fees based on a contract where the court did not have diversity jurisdiction); *see Berkla v. Corel Corp.*, 302 F.3d 909, 919 (9th Cir. 2002); *see also Sec. Mortgage Co. v. Powers*, 278 U.S. 149, 154 (1928) ("The construction of the

contract for attorney's fees presents, likewise, a question of local law.").[3]

California allows parties to allocate attorneys' fees by contract. Cal. Civ. Proc. Code § 1021. Under California law, California Civil Code section 1717 applies when determining whether and how attorneys' fees should be awarded under a contract. *Winding v. Wells Fargo Bank*, 2012 WL 603217, at *10 (E.D. Cal. Feb. 23, 2012) (citing *Sears v. Baccaglio*, 60 Cal.App.4th 1136, 1157 (1998)). California Civil Code section 1717 provides:

> In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs. . . . Reasonable attorney's fees shall be fixed by the court, and shall be an element of the costs of suit.

Cal. Civ. Code § 1717(a). In order for defendant to recover its attorney's fees, "(1) the contract must authorize such fees, (2) [defendant] must be the prevailing party, and (3) the fees incurred must be reasonable." *First Nat. Ins. Co. of Am. v. MBA Const.*, 2005 WL 3406336, at *2 (E.D. Cal. Dec. 12, 2005).

### III.   Discussion

#### A.   Notice of Appeal

Plaintiff states that there is a pending appeal in this matter and "the outcome may significantly impact the final determination of the issues at hand." (ECF No. 51 at 12.) Defendant argues that the motion is not premature due to the appeal. (ECF No. 52 at 6.) This Court retains the power to award attorney's fees after a notice of appeal from the decision on the merits has been filed. *Masalosalo by Masalosalo v. Stonewall Ins. Co.*, 718 F.2d 955, 957 (9th Cir. 1983). "Recognition of continuing jurisdiction to award fees may prevent delay and duplication at the appellate level. If a district court decides a fee issue early in the course of a pending appeal on the merits, and the fee order is appealed, the appeals may be consolidated." *Id.* "[A]lthough district courts may defer ruling on an attorneys' fees motion until after the resolution of the appeal, 'the weight of authority is that the usual course is for the Court to consider

---

[3] Neither party contests that California law applies to this motion.

attorneys' fees promptly after the merits decision rather than stay a motion for attorneys' fees until resolution of the appeal.'" *California v. Rish Investments, Inc.*, 2024 WL 5317165, at *2 (C.D. Cal. Oct. 24, 2024) (citation omitted). Accordingly, the Court will rule on defendant's motion for attorney's fees now, rather than deferring ruling on the motion pending resolution of the appeal.

### B. The Contract Authorizes Fees

Defendant argues that this action arose "on a contract" because the credit agreement contained in plaintiff's loan documents contained a fee provision. (ECF No. 43-1 at 7; *see* ECF No. 43-3 at 8 (Declaration of Ron Scribner, Exh. 1).) Defendant states that the "crux of [plaintiff's] action challenged [defendant's] interest in the Property and right to recover its outstanding loan to [plaintiff] under the loan documents." (ECF No. 43-1 at 8.) In her opposition, plaintiff argues that her claim was not based on a contract because her "primary claims concern the defendant's conduct in issuing an IRS Form 1099-C and the implications of this action, rather than disputes directly arising from the terms of the mortgage agreement itself." (ECF No. 51 at 7.) She states that her "core allegation is that the Defendant issued a 1099-C form, which has significant legal implications independent of the mortgage agreement." (*Id.*)

The requirement that an action be "on the contract" is construed liberally. *Lafarge Conseils Et Etudes S.A. v. Kaiser Cement and Gypsum Corp.*, 791 F.2d 1334, 1340 n.16 (9th Cir. 1986). An action is "on a contract" under section 1717 if "the action (or cause of action) 'involves' an agreement, in the sense that the action (or cause of action) arises out of, is based upon, or relates to an agreement by seeking to define or interpret its terms or to determine or enforce a party's rights or duties under the agreement"; and the agreement contains an attorney's fee provision. *Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc.*, 211 Cal.App.4th 230, 242 (2012).

Here, plaintiff brought her complaint against defendant, alleging that defendant issued a 1099-C relieving plaintiff of her obligation to pay approximately $171,952.44 on her loan, but that defendant continued to demand payment from plaintiff. (ECF No. 1 at 3-4.) Plaintiff alleged that defendant "issued a 1099-C cancellation of debt to Plaintiff in September 2018, thereby

releasing her personal liability on the loan." (*Id.* at 5.) "[I]nstead of updating Plaintiff's credit report to indicate the debt was forgiven, [defendant] continued to report that plaintiff was liable for the load and still owned hundreds of thousands of dollars, despite Plaintiff no longer being liable for any personal debt to [defendant]." (*Id.*) Plaintiff alleged that defendant "continues to demand payment from Plaintiff despite Plaintiff not being legally required to pay [defendant] due to the 1099-C," that defendant "continued to report a derogatory and inaccurate tradeline to the credit reporting agencies despite knowing that Plaintiff was not responsible for the debt." (*Id.* at 6, 7.) She also alleged that defendant cancelled plaintiff's debt under the equity line of credit and that this cancellation of debt renders the Deed of Trust worthless. (*Id.* at 8.) In sum, plaintiff brought her claims because she thought the 1099-C form cancelled her debt to defendant, however, defendant continued to "demand payment from Plaintiff as well as report on Plaintiff's credit report that she was responsible for the forgiven debt." (*Id.* at 4.)

The Court finds that this case relates to the loan agreement because plaintiff's case asserted wrongful attempts to collect on the loan when her debt was allegedly forgiven. Additionally, plaintiff's claims are "intertwined" with the contract at issue because without the contract, she would have no claim. *See Becker v. Wells Fargo Bank, NA, Inc.*, 2014 WL 7409447, at *5 (E.D. Cal. Dec. 30, 2014); *see also Barrientos v. 1801–1825 Morton LLC*, 583 F.3d 1197, 1216 (9th Cir. 2009) (interpreting the language of Section 1717 liberally to find that an action is "on a contract" whenever "the underlying contract between the parties is not collateral to the proceedings but plays an integral part in defining the rights of the parties" (citation omitted)). Further, the claims at issue do not need to be specific contractual claims. *See Yoon v. Cam IX Trust*, 60 Cal.App.5th 388, 393 (2021) (fraud and negligence claims seeking to avoid obligations under note constituted action "on a contract"); *California-American Water Co. v. Marina Coast Water Dist.*, 18 Cal.App.5th 571, 578 (2017) ("[A] party's entitlement to attorney fees under section 1717 turns on the fact that the litigation was about the existence and enforceability of the contract, not on the presence of particular contractual claims or a request for specific performance.").

The credit agreement contains a "Collection Costs" provision that states:

7

> We may hire or pay someone else to help collect this Agreement if you do not pay. You will pay us that amount. This includes, subject to any limits under applicable law, our attorneys' fees and our legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. You also will pay any court costs, in addition to all other sums provided by law.

(ECF No. 43-3 at 8.)

Based on this fee provision, defendant is entitled to seek fees under section 1717. *See Winding*, 2012 WL 603217, at *11; *see also FDIC v. Rothenberg*, 2024 WL 4859088, at *2 (N.D. Cal. Nov. 20, 2024) (finding same fee provision valid). While defendant did not initiate this lawsuit to collect on the agreement, it still needed to hire someone to help collect on the agreement because plaintiff did not pay her loan (because her debt was allegedly forgiven). (*See* ECF No. 43-1 at 5.)

Accordingly, this case arises "on a contract." *See Siligo v. Castellucci*, 21 Cal.App.4th 873, 878 (1994) ("[A]n obligation to pay attorney fees incurred in the enforcement of a contract 'includes attorneys' fees incurred in defending against a challenge to the underlying validity of the obligation.'" (citation omitted)).

### C. Defendant Tri-Counties Bank Is the Prevailing Party

"To be a prevailing party, the party must have received an enforceable judgment on the merits or a court-ordered consent decree." *United States v. Milner*, 583 F.3d 1174, 1196 (9th Cir.2009). An involuntary dismissal, "except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19–operates as an adjudication on the merits." Fed. R. Civ. P. 41(b).

Here, plaintiff's complaint was involuntarily dismissed under Rule 41(b) and judgment was entered in defendant's favor. (ECF Nos. 31, 36, 37.) Therefore, defendant is the prevailing party. *See Winding*, 2012 WL 603217, at *11.

### D. Calculation of Reasonable Attorney's Fees to Be Awarded

The Ninth Circuit affords district courts broad discretion in determining the reasonableness of fees. *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992). While the

amount of a fee award is discretionary, the district court must "provide a concise but clear explanation of its reasons for the fee award." *Carter v. Caleb Brett LLC*, 757 F.3d 866, 868 (9th Cir. 2014). The Ninth Circuit utilizes the "lodestar" method for assessing reasonable attorney's fees. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). Under the "lodestar" method, the number of hours reasonably expended is multiplied by a reasonable hourly rate. *Id*. Reasonable hourly rates are determined by the "prevailing market rates in the relevant community." *Sorenson v. Mink*, 239 F.3d 1140, 1145 (9th Cir. 2001). "[T]he established standard when determining a reasonable hourly rate is the 'rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation.'" *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (quoting *Barjon v. Dalton*, 132 F.3d 496, 502 (9th Cir. 1997)). Generally, "the relevant community is the forum in which the district court sits." *Camacho*, 523 F.3d at 979 (quoting *Barjon*, 132 F.3d at 500). Here, the relevant community is Sacramento, California, where this district court is located.

Defendant seeks attorney's fees in the amount of $45,811.00 for four attorneys who worked a total of 106 hours spent prosecuting this case for over two years. (ECF No. 43-1 at 13.) Defendant's fees are based on a $480 hourly rate for 50.30 hours by Attorney Robert McWhorter; a $380 hourly rate for 50.30 hours by Attorney Jarrett Osborne-Revis; a $690 hourly rate for 0.80 hours by Attorney Philip Wolman; and a $435 hourly rate for 4.60 hours by Attorney Stuart Simon. (*Id.*) Defendant argues that the time spent is reasonable because all of plaintiff's claims were based on a novel, undecided legal issue. Defendant states that the hours for Mr. Osborne-Revis includes 8 hours spent preparing this motion and 5 hours expected for the remaining briefing and hearing. (*Id.* at 13 n.1.)

The Court finds that 103 hours is a reasonable amount of time to litigate this case for two years, although the Court is reducing the total by 3 hours from Mr. Osborne-Revis's time because the parties did not attend or prepare for a hearing in this case. The Court also finds that the defendant's counsel's hourly rates are reasonable for work performed by attorneys of comparable experience in Sacramento.

1      Defendant's counsel Robert S. McWhorter began practicing law in 1993 and focuses on
2  representing financial institutions and business entities in commercial, business, and bankruptcy
3  litigation.  (ECF No. 43-2 at 3 (Declaration of Jarrett S. Osborne-Revis ¶ 8).)  Defendant's
4  counsel Jarrett Osborne-Revis began practicing law in 2013 and his practice focuses on
5  representing financial institutions and business entities in commercial, business, and bankruptcy
6  litigation.  (*Id.* ¶ 9.)  Philip Wolman and Stuart Simon are tax lawyers with over 40 years of
7  experience each.  (*Id.* at 4, ¶ 10.)  A review of the California State Bar website shows that all
8  attorneys are admitted to the California State Bar.

9      Defendants have sufficiently supported their proposed hourly rates with case law in the
10 prevailing market.  The Court will rely on defendant's motion, its own knowledge of customary
11 legal rates in Sacramento, and also survey cases in deciding a reasonably hourly rate.  *See Ingram*
12 *v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).

13     The Court finds that hourly rates of $480 for McWhorter, an attorney with over 30 years
14 experience; $380 for Mr. Osborne-Revis, an attorney with over 10 years experience; $690 for
15 Wolman, a tax attorney with over 40 years experience; and $435 for Mr. Simon, a tax attorney
16 with over 40 years experience are reasonable and reflect the prevailing market rate in Sacramento
17 for attorneys of comparable skill, experience, and reputation.  *See, e.g.*, *Siafarikas v. Mercedez-*
18 *Benz USA, LLC*, 2022 WL 16926265, at *3 (E.D. Cal. Nov. 10, 2022) (approving $500 for an
19 attorney who had practiced law for 21 years); *Emmons v. Quest Diagnostics Clinical Labs., Inc.*,
20 2017 WL 749018, at *8 (E.D. Cal. Feb 27, 2017) (approving hourly rates between $370 and $495
21 for associates and $545 and $695 for senior counsel and partners); *Am. Multi-Cinema, Inc. v.*
22 *Manteca Lifestyle Ctr., LLC*, 2024 WL 1312209, at *3 (E.D. Cal. Mar. 26, 2024) (awarding $700
23 per hour for partners); *Gong-Chun v. Aetna Inc.*, 2012 WL 2872788, at *23 (E.D. Cal. July 12,
24 2012) (awarding between $490 and $695 per hour for senior counsel and partners).  Accordingly,
25 the Court concludes attorney's fees in the amount of $44, 671.00 is reasonable.

### E.  Plaintiff's Other Arguments

27     In her opposition, plaintiff argues that defendant has failed to show that plaintiff's claims
28 were frivolous or legally baseless under California Code of Civil Procedure section 128.7.  (ECF

No. 51 at 2-3.) She states that just because her claim was unsuccessful does not mean that it is frivolous. (*Id.* at 3.) Defendant argues that it does not seek sanctions under section 128.7, and instead relied on California Civil Code section 1717. (ECF No. 52 at 5-6.) Additionally, defendant states that section 128.7 does not apply in federal court. *Id.* at 6 (citing *Twin City Fire Ins. Co. v. Spry*, 2014 WL 12564022, at *2 (E.D. Cal. May 12, 2014) ("Section 128.7 does not appear to apply in federal court, because federal law governs procedural issues in federal court."). Section 128.7 does not apply here.

## IV. Conclusion

For the reasons set forth above, IT IS HEREBY RECOMMENDED that defendant Tri-Counties Bank's motion for attorney's fees be GRANTED in the amount of $44,671.00 against plaintiff Mary Love.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the court within seven (7) days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated: February 10, 2025

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

5, love.1761.22